A98A1049. MARCHMAN v. GRANGE MUTUAL INSURANCE COMPANY.
(500 SE2d 659)

ELDRIDGE, Judge.

Jimmy Marchman, individually and as executor of the estate of his late wife, Barbara Marchman, filed suit against the defendant, Grange Mutual Insurance Company ("Grange Mutual"), in an effort to recover $70,000 in property insurance following a May 1995 fire that destroyed Marchman's home. The trial court granted summary judgment to Grange Mutual after finding that Marchman had not rebuilt his home, thereby failing to satisfy the condition precedent to

recovery under a rider to the insurance policy at issue. Marchman appeals, and we affirm.

In his sole enumeration of error, Marchman asserts that the trial court misconstrued OCGA § 33-32-5 (a), Georgia's Valued Policy Statute, and failed to apply its provisions to supersede the express terms of the insurance rider. OCGA § 33-32-5 (a) reads in pertinent part as follows: "Whenever any policy of insurance is issued to a natural person or persons insuring a specifically described one or two family residential building or structure located in this state against loss by fire and the building or structure is wholly destroyed by fire without fraudulent or criminal fault on the part of the insured or one acting in his behalf, *the amount of insurance set forth in the policy* relative to the building or structure *shall be taken conclusively to be the value of the property*." (Emphasis supplied.)

The Grange Mutual insurance policy on Marchman's home showed basic coverage in the amount of $125,500. Marchman and Trust Company Bank, as mortgagee, jointly received this amount in December 1995. The bank retained approximately $109,000 in satisfaction of the mortgage and issued a check for the remaining proceeds to Marchman.

In addition to the basic coverage, Marchman also had purchased a "Homeowners Vantage Plus Endorsement"; this insurance rider provided for "dwelling replacement cost coverage." Under this rider, Grange Mutual agreed to pay the full replacement cost of the destroyed property, regardless of the limits in the basic policy. However, the express language of the rider reads as follows: "We will pay only an amount equal to the actual cash value of your damaged property *until the actual repair or replacement is complete*." (Emphasis supplied.) The requirement to repair or replace is restated in the homeowner's policy manual, which states that "[i]f the full cost to repair or replace the damaged property is more than $2,500 or 5% of the insurance for the dwelling or other structure in this policy, we will not be liable for full replacement cost *until actual repair or replacement is completed*." (Emphasis supplied.)

Further, as an additional condition precedent to receiving the benefits of the rider, Marchman was required to pay a higher "adjusted premium." Although the rider contained a provision that the replacement had to occur within 180 days of the loss, Grange Mutual gave Marchman over a year to secure a building loan and replace his home.

However, Trust Company Bank refused to finance the rebuilding of Marchman's home. Marchman admitted during the summary judgment motion hearing that he had not contacted other lending institutions about securing a loan.

Marchman subsequently filed a claim against Grange Mutual,

asserting that the replacement cost rider increased the "face value" of his insurance policy. Therefore, under OCGA § 33-32-5 (a), he was entitled to the proceeds of the basic coverage of $125,500 plus an additional $70,000,[1] regardless of whether or not he rebuilt his home. For the following reasons, we disagree.

1. Marchman asserts that the insurance contract is ambiguous and, therefore, should be construed in his favor. See *Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 518 (466 SE2d 48) (1995). However, the insurance contract is internally consistent, and the plain, unambiguous language requires no judicial construction. See OCGA §§ 13-2-1; 13-2-2 (2), (4); 33-24-16. The contract clearly requires, as conditions precedent to receiving benefits under the replacement cost rider, that Marchman (a) rebuild his home and (b) pay additional premiums. In fact, in responding to Grange Mutual's motion for summary judgment, Marchman admitted that the $70,000 was due and payable "subject to the insured's compliance with the conditions of the policy."

"When a plaintiff's right to recover on a contract depends upon a condition precedent to be performed by him, he must allege and prove the performance of such condition precedent, or allege a sufficient legal excuse for its nonperformance. [Cits.]" (Punctuation omitted.) *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 560 (177 SE2d 819) (1970). It is undisputed that Marchman has not rebuilt the home or paid the additional premiums. Further, his assertion that he was unable to get financing to rebuild because of his pending bankruptcy proceedings was lost when he admitted that he abandoned his pursuit of such financing once Trust Company Bank, his former mortgagee, rejected his rebuilding loan request. Accordingly, Marchman failed to present any evidence to create a material issue of fact regarding his performance of the conditions precedent and his entitlement to benefits under the replacement cost rider, and the trial court was authorized to grant summary judgment to Grange Mutual. See OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. However, Marchman claims that OCGA § 33-32-5 (a) should supersede the express, unambiguous provisions of this rider, although he cites to no authority for this assertion. Instead, Marchman argues that public policy requires that the statute be applied to insurance riders outside the basic coverage. This argument is without merit.

OCGA § 33-32-5 protects property owners from the overwhelm-

---

[1] The $70,000 figure represents the difference between the face value of the insurance policy, $125,500, and the alleged cost of $195,500 to rebuild the house to its pre-loss condition.

ing burden of proving the value of property *after it has been totally destroyed by fire* by "conclusively" establishing that the value of the property equals the face value of the policy. In this way, a property owner is entitled to the benefits of the insurance coverage without the difficult and perhaps impossible task of proving actual damages. See *Harvey v. Gen. Guaranty Ins. Co.*, 201 S2d 689 (La. App. 1967). "Such a valuation is in the nature of a contract for liquidated damages." 6A Appleman, Ins. Law & Practice, § 3827, pp. 245-246. In this case, Marchman has accepted the benefits of this statutory protection, receiving $125,500 in insurance proceeds without having to prove the value of his home prior to the fire. The proceeds were then deposited in the bank or used to satisfy his mortgage.

However, when a property owner attempts to recover under a replacement cost rider, the actual cost of repair or replacement already has been incurred, so that it is definite and ascertainable. As such, there is no need to statutorily mandate conclusions as to the value of a structure once it has been rebuilt. Accordingly, OCGA § 33-32-5 (a) does not apply to insurance riders that require replacement or repair as a condition precedent to recovery of insurance proceeds. See generally *BSF, Inc. v. Cason*, 175 Ga. App. 271, 274 (333 SE2d 154) (1985). There was no error in the trial court's grant of summary judgment to Grange Mutual.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MAY 6, 1998 —

*Robert E. Richardson*, for appellant.
*Mozley, Finlayson & Loggins, William D. Harrison, Lawrence B. Domenico*, for appellee.